UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JOHNNY LEE STOKES,

        Petitioner,

      v.                           Case No. 07-C-0248

UNITED STATES OF AMERICA,

        Respondent.

## DECISION AND ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL (DOC. 21), GRANTING MOTIONS FOR EXTENSION OF TIME TO FILE BRIEF (DOCS. 22, 25, 26), DENYING MOTION UNDER 28 U.S.C. § 2255 (DOC. 1), AND DISMISSING CASE

In 2007, Johnny Lee Stokes filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. In addition, Stokes seeks the appointment of counsel and an extension of time to file briefs. The court now decides all pending matters.

## MOTION FOR APPOINTMENT OF COUNSEL

Stokes moves for appointment of counsel in this case. "Due process does not require appointment of counsel for indigent prisoners pursuing . . . federal habeas relief." *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007). Indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *Id.* at 649.

The Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), permits the court to appoint counsel for an indigent movant seeking relief under 28 U.S.C. § 2255. To do so, the court must find that the appointment of counsel would serve "the interests of justice" and that the petitioner is "financially eligible." 18 U.S.C. § 3006A(a)(2). Appointment of counsel for § 2255 movants is within the district court's discretion and is governed by standards similar to those followed in civil cases with plaintiffs proceeding in forma

pauperis.  *See Jackson*, 953 F.2d at 1071; *Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983).

A threshold question is whether the litigant has attempted to obtain counsel previously or has been precluded from doing so.  *Pruitt*, 503 F.3d at 654-55; *Jackson*, 953 F.2d at 1072-73.  Once the petitioner has established that his reasonable efforts to obtain counsel were unsuccessful the court conducts "a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself." *Pruitt*, 503 F.3d at 655.  The inquiries are intertwined; "the question is whether the difficulty of the case—factually and legally—exceeds the particular [party's] capacity as a layperson to coherently present it to the judge or jury." *Id*.  Whether a party appears competent to litigate his own claims, given their difficulty, includes consideration of all parts of litigation, including evidence gathering and responding to motions.  *Id.*  Regarding the party's ability to litigate the case, the court should review "whatever relevant evidence is available on the question," including pleadings and communications from the party.  *Id.*

In this instance, Stokes has not met the threshold requirement of establishing that he has looked for counsel to represent him at a reduced fee or no charge.  In addition, Stokes fails to discuss his ability to pursue this case and the case's legal complexity.  Stokes simply notes that there is no constitutional guarantee of counsel in this case and requests that counsel be appointed.  He does not discuss *why* counsel should be appointed.

With due regard for the matters on file, the court is unpersuaded that this case exceeds Stokes's capacity to coherently present his claims in this proceeding.  The documents Stokes has submitted in this case are reasonably coherent, the court has given

2

Stokes plenty of time to work on his case, Stokes has been able to submit affidavits and an eighteen-page brief without the assistance of an attorney, and the record is relatively straightforward. Therefore, following review of the *Pruitt* factors as they apply to Stokes's claims, the court does not believe the interests of justice or fundamental fairness require appointment of counsel.

MOTIONS FOR EXTENSION OF TIME

On June 15, 2009, this court ordered the United States to answer Stokes's motion and set a briefing schedule. After two extensions of time, on September 10, 2009, the United States responded to the § 2255 motion. Thereafter, Stokes filed a motion for an extension of time to file his brief. He withdrew that motion then filed another request for an extension of time (Doc. 22), seeking ninety more days to file his brief. That extension would have extended the filing date to October 19, 2010. Then, in letters filed September 29 and 30, Stokes sought an additional thirty-day extension of time, to November 18. (Docs. 25, 26.) The court received and filed Stokes's brief in support on November 19, 2010, in an envelope postmarked November 17, 2010. As a consequence, the pending motions to extend time for Stokes to file his reply brief will be granted.

SECTION 2255 MOTION

As an initial matter the court finds that the United States is not required to file a response brief in this case because it appears that Stokes's claims can be resolved with the documents on file in this case and in Stokes's criminal case.

During the initial screening of Stokes's § 2255 motion, the court identified the following grounds for relief: (1) trial counsel provided ineffective assistance to Stokes at the plea bargaining stage; (2) (a) the district court failed to follow Fed. R. Crim. P. 11 at the

3

guilty plea hearing, and (b) appellate counsel was ineffective for failing to challenge the plea on appeal; (3) trial counsel was ineffective for failing to pursue a "safety-valve" sentence reduction; (4) appellate counsel was ineffective for failing to rebut a statement by the court on limited remand; (5) (a) trial counsel was ineffective for failing to argue that the court could not order restitution of "buy money," and (b) appellate counsel was ineffective for failing to raise the restitution issue on appeal; and (6) trial counsel was ineffective at the pre-trial stage for failing to challenge the search warrants and for search of a residence. However, for each of the grounds, rather than setting forth specific facts in support of his claims, Stokes stated that a memorandum of law would be submitted separately.

The court found that allegations in the motion and in an accompanying motion for production of documents put the government on notice as to all but ground (1). As to ground (1) the court ordered Stokes to amend his motion to add specific facts. This was done, and as discussed in the screening order of June 15, 2009, Stokes's motion now consists of his original submission (Doc. 1) along with the amendment (the first three pages attached to the motion in Doc. 6).

In its June 2009 screening order the court restated Stokes's grounds for relief as follows: (1) trial counsel committed ineffective assistance at the plea stage by (a) guaranteeing that he would receive only a three or four year sentence (he received almost twelve years) and would get into a substance abuse program in prison that would reduce his sentence, (b) coercing Stokes to plead guilty by saying that if he did not he would not be allowed to see his dying father, (c) failing to explain to him the nature of the charges to which he was pleading guilty and the forfeiture and relevant conduct consequences, and

(d) forcing Stokes to lie at his plea hearing, thereby causing the guilty plea to have been entered unknowingly, unintelligently, and involuntarily; (2) (a) the district court did not follow Fed. R. Crim. P. 11 at the guilty plea hearing by failing to address him personally in open court and failing to ensure he understood the nature of the charge, and (b) appellate counsel was ineffective for failing to raise the Rule 11 issue on appeal; (3) trial counsel was ineffective for failing to pursue the "safety-valve" reduction at sentencing; (4) appellate counsel was ineffective for failing to rebut the court's statement on limited remand; (5) (a) trial counsel was ineffective for failing to question whether the district court could order restitution of "buy money," and (b) appellate counsel was ineffective for failing to raise the "buy money" issue on appeal; and (6) trial counsel was ineffective at the pre-trial stage for failing to challenge the search of and the search warrants for a different residence. However, the court dismissed claim (6). (*See* Doc. 8 at 4, 5.)

In his brief, Stokes focuses primarily on ground one, his claim that trial counsel was ineffective in connection with his guilty plea.

(1)     Ineffective Assistance of Trial Counsel at the Plea Stage

First, Stokes contends that trial counsel was ineffective because she (or they[1]) (a) guaranteed that he would receive only a three or four year sentence (he received almost twelve years) and would get into a substance abuse program in prison that would reduce his sentence, (b) coerced him to plead guilty by saying that if he did not plead guilty he would not be allowed to see his dying father, (c) failed to explain to him the nature of

---

[1]Stokes was represented by three attorneys at the same law firm. However, the court generally refers to his counsel in the singular because the attorneys did not always meet with him together or appear in court at the same time. Attorney Bridget Boyle-Saxton appears to have been primary counsel.

the charges to which he was pleading guilty and the consequences, including the forfeiture and relevant conduct implications, and (d) forced him to lie at the plea hearing. Thus, this court examines Stokes's plea in light of ineffective assistance of counsel and plea standards.

To establish ineffective assistance of counsel, Stokes must show that counsel's representation was deficient, i.e., that it fell below an objective standard of reasonableness, and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance standard permits a wide latitude of attorney conduct, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks deleted); *see also Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). Judicial scrutiny is "highly deferential" and the court strongly presumes that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated from his or her perspective at the time; hindsight should not distort the evaluation. *Id.* If the prisoner has identified specific omissions, the court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

Once the prisoner establishes his counsel's ineffectiveness, he must demonstrate prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the guilty-plea context, to show prejudice a § 2255 movant must demonstrate that the attorney's advice was a decisive factor in his decision to enter a guilty plea instead of going to trial. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).

6

A mere allegation that the movant would have chosen a path other than pleading guilty is insufficient to establish prejudice. *Id.*

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. If it is easier to dispose of an ineffectiveness claim for lack of sufficient prejudice then that course should be followed. *Id.*

To be valid, a guilty plea must be made voluntarily, intelligently, and knowingly. *Brady v. United States*, 397 U.S. 742, 747 & n.4 (1970); *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002). "A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea." *Galbraith*, 313 F.3d at 1006. "A plea is knowing and intelligent when the defendant is competent, aware of the charges and advised by competent counsel." *Id.*

Because Stokes charges that counsel made him lie at the plea hearing and give false responses to the court's questions under Fed. R. Crim. P. 11, the court uses the plea hearing transcript as the starting point for addressing this issue. The statements of a defendant in a plea colloquy are accorded a presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). The representations of the defendant at a plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73-74. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*, 431 U.S. at 74. As the court stated in *Ellison*,

7

> Rational conduct requires that voluntary responses made by a defendant under oath before an examining judge be binding. . . . For a defendant to claim (as Ellison has) that he believed he could lie and later recant to achieve some perceived advantage does not comport with rational conduct. Ellison's sworn responses before a district judge were not coerced and those answers control his fate.

*Id.*

However, there is no per se rule excluding the possibility that a defendant's statements at the guilty plea hearing were the product of duress or misrepresentation by others. *Blackledge*, 431 U.S. at 75. But the defendant's allegations must be more than vague, conclusory, incredible, or patently frivolous. *Id.* at 75-76. The defendant in *Blackledge*, for instance, described specific factual allegations regarding the terms of an unkept promise by his attorney and the prosecutor, where and when the promise had been made, and the identity of a witness to the promise. *Id.* at 75-76. Importantly, because no transcript or recording of the hearing was made, there was no record to consult regarding the actual proceedings. *See id.* at 77. To the contrary, if the court has followed a procedure like that in Fed. R. Civ. P. 11, with "careful explication of the legitimacy of plea bargaining, the questioning of both lawyers, and the verbatim record of their answers," *Blackledge*, 431 U.S. at 79, the defendant will have a very difficult time avoiding the statements he made at a plea hearing. *See id.* at 79 & n.18.

Here, Stokes has provided merely a general assertion that his attorneys told him to lie—he sets forth no specifics as to when or where such direction occurred, what he was supposed to lie about, or other details. He says merely that defense counsel coerced him into lying at the plea hearing to enable him to stay on bond and to see his dying father. (Mot. to Amend § 2255 Mot. at 3.) Although Stokes references affidavits for this assertion

(*id.*), the affidavits mention defense counsel's representations regarding the sentence and Stokes seeing his dying father but do not identify specific statements by defense counsel directing Stokes to lie. (*Id.* Exs.) Moreover, Stokes's timing does not work, drawing into question the veracity of his statements. Stokes contends that he was coerced into lying at the plea hearing in exchange for staying "out on bond to see his father on his death bed." (Mot. to Amend § 2255 Mot. at 3.) However, by the date of the plea hearing Stokes had seen his father on his death bed.

Even more important, unlike the situation in *Blackledge*, this court conducted a thorough Rule 11 colloquy that covered the details of the plea agreement and Stokes's unequivocal testimony that he was entering his guilty plea freely, voluntarily, and intelligently. Stokes was placed under oath, after having been warned that once he was sworn he was required to answer questions truthfully. *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 3-4 (E.D. Wis. filed May 23, 2006). These statements by Stokes during the plea colloquy are accorded a presumption of verity and his subsequent self serving assertion that he was told to lie is subject to summary dismissal.

Next, Stokes contends that trial counsel guaranteed, following her conversation with the prosecutor, that he would receive only a three or four year sentence and would get into a prison substance abuse program. To support this claim, Stokes has provided his own affidavit and the affidavits of his two sisters who were present during at least one meeting with counsel, stating that counsel did so guarantee. (Mot. to Amend § 2255 Mot. Exs.) Stokes's sister, Verdrine Cloombs, states she "heard Ms. Boyle-Saxton tell my brother Johnny Stokes on January 12, 2004, 'that she had spoken with the Assistant U.S. Attorney Gail Hoffman and that she had said that if Johnny Stokes would

agree to enter into a guilty plea, she would guarantee him a 3 to 4 year sentence and would also assure Johnny Stokes entrance into the Bureau Of Prisons Substance Abuse Program.'" (*Id.*, Ex. Cloombs Aff. ¶ 4.)

Trial counsel has filed an affidavit stating she never made such guarantees. (Answer, Ex. A ¶¶ 13-15.) This raises a factual dispute, but no evidentiary hearing is required to resolve it. Even assuming trial counsel gave Stokes a guarantee, Stokes's claim fails, as he cannot establish prejudice in the form of an involuntary, unintelligent, and unknowing plea. At Stokes's plea hearing, counsel indicated that she had gone through the entire plea agreement, word for word, with Stokes. Stokes then stated that he agreed with his attorney's representation. *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 10-11 (E.D. Wis. filed May 23, 2006). The plea agreement set forth the maximum term of imprisonment as "ten years to life." *United States v. Stokes*, No. 03-CR-217, Plea Agr. ¶ 6 (E.D. Wis. filed Jan. 13, 2004). Further, the plea agreement stated that the parties acknowledged all of the U.S. Sentencing Guidelines provisions applicable to the offense and would jointly recommend that the base offense level for count two (the count to which Stokes pled guilty) was 36, but that Stokes should be eligible for a three-point reduction for acceptance of responsibility. *Id.* ¶¶ 17, 20. An offense level of 33, even at criminal history I, would result in a Guidelines range of 135 to 168 months, far in excess of three to four years. USSG Sentencing Table (2003). Further, the parties acknowledged in the document that the district court would make its own sentencing decision up to the maximum penalties previously noted. *United States v. Stokes*, No. 03-CR-217, Plea Agr. ¶ 24 (E.D. Wis. filed Jan. 13, 2004).

In addition, at the plea hearing, this court asked Stokes to "tell me what you understand you are facing, if convicted," to which Stokes answered: "Ten years to life." *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 22 (E.D. Wis. filed May 23, 2006).

Thus, by the date of the plea hearing,[2] Stokes was under no misconception about the penalty range or of this court's ability to sentence him as it believed appropriate, regardless of his own attorney's statements or recommendation. As a result, he was not prejudiced by any "guarantee" counsel may have made at an earlier meeting. Further, Stokes's statements at the plea hearing indicate that notwithstanding any prior inaccurate statements by counsel, when he entered the plea agreement and testified during the plea hearing, he was proceeding with full knowledge of the penalty he was facing if convicted.

Moreover, Stokes has failed to persuade the court that he would not have pled guilty if his counsel's alleged guarantee had not been made. He states that "there is a reasonable probability that he would not have pleaded guilty but would have insisted on going to trial minus defense counsel's incompetence, coercion and the 3 to 4 year prison sentence promise." (Mot. to Amend § 2255 Mot. at 3.) However, the assertion of a mere probability that Stokes would not have pled guilty is insufficient to establish prejudice.

Contrary to an expectation of a "guarantee" of a drug treatment program that would reduce his sentence, Stokes assured the court during the plea hearing that noone had made promises to him and that there were no unwritten side deals that were part of

---

[2]Stokes contends briefly that he never reviewed the written plea agreement with counsel prior to signing it, but was simply furnished with the signature page. (Mot. to Amend § 2255 Mot. at 3.) However, Stokes testified under oath at the plea hearing that he was a good reader and had read the plea agreement about one week prior to January 21, 2004.

the plea agreement.  *Id.* at 23.  Thus, based on Stokes's statements, by the time of the plea hearing he was not prejudiced by any prior representation regarding drug treatment. Hence, his plea was made knowingly, intelligently, and voluntarily with respect to any terms of imprisonment.

Stokes's claim that defense counsel coerced him into pleading guilty by saying that if he did not he would not be allowed to see his dying father is again supported by his own affidavit and the affidavits of his two sisters.  Verdrine Cloombs states that "on January 12, 2004, at Ms. Bridget Boyle-Saxton's place of business, Ms. Boyle-Saxton also told my brother Johnny Stokes that if he would refuse the U.S. Attorney's offer, he would not be permitted to see my father prior to his passing, since my father was in his death bed."  (Mot. to Amend § 2255 Mot. Ex. Cloombs Aff. ¶ 5.)  Contrarily, Attorney Bridget Boyle avers that she never told Stokes to sign the plea agreement to be able to see his dying father.  (Answer, Ex. A ¶ 18)  Regardless of whether Stokes's assertions are true, he cannot establish prejudice entitling him to relief.

Initially, Stokes's plea hearing was scheduled for January 13, 2004. However, as reflected in the court's minutes, the hearing was rescheduled to January 21, 2004, and Stokes was permitted to travel to Indiana where he visited his dying father. *United States v. Stokes*, No. 03-CR-217, Minutes of 1/13/04 (E.D. Wis. filed Jan. 13, 2004).

As discussed at Stokes's plea hearing on January 21, 2004, Stokes's father passed away just days before, and the funeral had not taken place.  This court conducted a Fed. R. Crim. P. 11 colloquy with Stokes on January 21, 2004, then gave him time to think about his plea and granted him permission to attend his father's funeral in Indiana. *United States v. Stokes*, No. 03-CR-217, Minutes of 1/21/04 (E.D. Wis. filed Jan. 21, 2004);

12

*see United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 31 (E.D. Wis. filed May 23, 2006).

When the plea hearing commenced on January 21, 2004, Stokes had said he was not sure he had enough focus to go forward that day but would try. *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 6 (E.D. Wis. filed May 23, 2006). His attorney stated that although Stokes had not sounded well the night before, he seemed "a hundred times better" the morning of the plea hearing. *Id.* at 8. Based on what the court heard from Stokes and counsel, and Stokes's demeanor, the court decided to go forward with the hearing but not complete the proceeding that day. *Id.* at 9.

At the outset Stokes was informed that he could

> .stop at any point during the course of this hearing and ask that this matter be placed back on the trial calendar. You should also know that you may consult privately with legal counsel at any point during the course of this proceeding if you have questions or would like to just, I guess, get your bearing before you proceed.

*Id.* at 3. Toward the end of the hearing the court stated:

> Mr. Stokes, I am going to give you some time to think about this plea. I'm not going to accept your plea today and I'm going to put your case over to next week. I'm going to put it on at a time when you and your attorneys can return and you've had a chance to digest all of the consequences of your plea and to discuss with your attorneys again any concerns that you may have.

*Id.* at 28-29.

During the hearing, Stokes was asked whether he felt he was being pressured into pleading guilty. He stated: "No, sir." *Id.* at 14.

The parties reconvened on January 27, 2004, after the funeral, to complete the plea proceeding. The court asked whether there was any reason why it should not accept the plea at that time and Stokes replied "No, Your Honor." *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/27/04 Tr. at 3 (E.D. Wis. filed May 23, 2006).

Regardless of whether Stokes may have felt pressure to sign the plea agreement on January 13, 2004, when his father was dying, the court gave him at least two subsequent chances to stop the plea hearing process and to return his case to the trial calendar. At any time on or before January 21 or 27, 2004, Stokes could have changed his mind. Inasmuch as the court permitted Stokes to visit his father before he died, any pressure Stokes may have felt relating to some belief that he would not see his dying father dissipated before the plea was accepted. Yet, Stokes chose to go forward and the court accepted his guilty plea.

Next, the court turns to Stokes's contention that counsel failed to explain to him the nature of the charges to which he was pleading guilty, the forfeiture and the relevant conduct consequences. Again the record does not support Stokes's claim. Stokes's attorney states that she discussed at "great length" with Stokes all aspects of the plea agreement, including the factual basis for his guilty plea. (Answer, Ex. A ¶¶ 9, 11, 12, 18.)

Again, if the court assumes that counsel did fail to explain to Stokes the nature of the charge to which he was pleading, Stokes suffered no prejudice. As set forth below in section (2), the discussion at the plea hearing and the contents of the plea agreement apprised Stokes of the nature of the charge to which he pled guilty. Further,

14

at the January 21 plea hearing Stokes confirmed that his attorney reviewed the plea agreement with him word for word.

As to the forfeiture and relevant conduct consequences, the plea agreement covered those items as well. At the plea hearing, Stokes informed the court that he was a "pretty good" reader and had read through the plea agreement independent of his lawyers' review. *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 5, 11 (E.D. Wis. filed May 23, 2006). Stokes now contends that had defense counsel discussed with him the actual applicable guideline range, he would not have pled guilty (Suppl. Br. at 4). On the other hand, the record confirms that the sentencing range was covered by the plea agreement and Stokes's statements at the plea hearing indicated he understood the plea agreement.[3] For all of these reasons, this ground for relief is rejected.

(2)    Whether the District Court Failed to Follow Fed. R. Crim. P. 11

Because Stokes did not raise any issue concerning Fed. R. Crim. P. 11 on appeal (*see* Answer, Ex. B ¶ 2 (appellate counsel's statement of the two issues he presented on appeal for Stokes)), he procedurally defaulted this claim. Further, a violation of Rule 11 is neither constitutional nor jurisdictional; § 2255 relief is not available when all that is shown is a failure to comply with the formal requirements of the rule. *United States v. Timmreck*, 441 U.S. 780, 783-85 (1979).

---

[3]In his brief, Stokes raises for the first time the contention that defense counsel failed to perform any analysis, such as testing or weighing, of the cocaine found in Stokes's suitcase. (Suppl. Br. at 3.) This argument, raised for the first time after the government's answer, will not be considered.

In addition, Stokes raises for the first time in his brief the assertion that the prosecutor promised him that if he pled guilty she would take no action to forfeit his real estate on North 12th Street in Milwaukee. (Suppl. Br. at 14-15; *id*. Ex. A ¶¶ 3, 4.) This argument is rejected because it was raised too late and because it is belied by Stokes's statements at the plea hearing. Stokes swore to the court that no promises had been made that were not written in the plea agreement and that there were no side deals. *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 23 (E.D. Wis. filed May 23, 2006).

However, as Stokes also asserts that appellate counsel was ineffective for not raising this claim on appeal, the court finds it more expedient to address the claim on the merits. As a result, the court concludes that no Rule 11 violation occurred and that appellate counsel was not ineffective for failing to raise the issue on appeal.

Stokes described the factual basis for this claim in a motion for production of documents (Doc. 2): "Stokes seeks to establish . . . that the court failed to adhere to Rule 11 . . . by failing to 'address him personally in open court and inform him of, and determine that he understood (1) the nature of the charge to which the plea was offered'" (Doc. 2 at 2). Stokes contends that this court's comments were inadequate because they did not inform him of the nature, as opposed to the formal legal description, of the charges against him. (*Id.*)

To ensure that a defendant pleads guilty with knowledge and intelligence, Fed. R. Crim. P. 11 requires that a district court conduct a colloquy with the defendant in open court, informing him of various rights and ensuring that he understands them. *United States v. Blalock*, 321 F.3d 686, 688 (7th Cir. 2003). One of the topics the district court must address is the nature of the charge to which the defendant is pleading guilty. *Id.* District judges are permitted some variance in applying Rule 11; rigid adherence to the rule is not required as long as substantial rights are not disregarded. *Id.* "[V]alidity of a Rule 11 colloquy is based on the totality of the circumstances." *Id.* Review of whether the court explained the nature of the charge against the defendant includes consideration of the complexity of the charge; the defendant's age, education, and level of intelligence; whether the defendant was represented by counsel; the judge's inquiry during the plea hearing; the defendant's statements; and the evidence proffered by the government. *Id.* at 688-89.

Considering these factors, Rule 11 was not violated in Stokes's case, even assuming that counsel did not specifically discuss the nature of the charge with Stokes. No issue has been raised regarding Stokes's age, intelligence, or education.  The charge to which Stokes pled guilty was not complicated:  knowing and intentional possession with the intent to distribute a controlled substance, identified in the indictment and plea agreement as approximately ten kilograms of a mixture and substance containing cocaine, at a specific address in Milwaukee on or about September 29, 2003.  Moreover, the court read the charge to Stokes at the plea hearing.  *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 14 (E.D. Wis. filed May 23, 2006).

Again, at Stokes's plea hearing, counsel stated that she had gone through the entire plea agreement with Stokes word for word, and Stokes agreed.  *Id.* at 10-11.  The court then asked Stokes whether he had gone through the facts the government claimed it could prove, which were set forth in the plea agreement, and inquired whether Stokes agreed with them.  Stokes stated that he had gone through those facts, that he agreed with them, and that there was no part of the written statement of facts with which he did not agree.  *Id.* at 15.  Those facts included the contents of recorded phone conversations with Stokes discussing his source of cocaine, the price of a kilogram of cocaine from his source, and arrangements for a transaction of ten kilograms of cocaine on September 29, 2003. *United States v. Stokes*, No. 03-CR-217, Plea Agr. ¶ 5 (E.D. Wis. filed Jan. 13, 2004).  Those facts also included details of the actual transaction on September 29, 2003, including the specific names of others involved in the transaction with Stokes.  *Id.*

17

Next, the court asked Stokes to summarize his involvement in the offense. Although Stokes's statement may not have been the most clear and eloquent description of his criminal activity, through answers to clarifying questions Stokes indicated that arrangements were made to sell up to ten kilograms of cocaine, *United States v. Stokes*, No. 03-CR-217, Plea Hr'g of 1/21/04 Tr. at 17 (E.D. Wis. filed May 23, 2006), that Stokes handed a bag to "J.R." that he believed contained cocaine in an amount Stokes believed to be ten kilograms, *id.* at 20-21, that Stokes had talked about selling and it was his intention to sell ten kilograms of cocaine, *id.* at 21, and that he took the cocaine out and put it on a table for J.R. to cut open with a razor blade, *id.*

Thus, although the court did not recite all of the factual basis of the charge to Stokes, those facts were sufficiently covered by the plea agreement as well as the statement by Stokes and his responses to the court's inquiries. Together with Stokes's age, education, and intelligence and the lack of complexity of the charge, no Rule 11 violation occurred. Therefore, Stokes's appellate attorney was not ineffective for failing to raise such an issue on appeal.

(3)&(5)      Ineffective Assistance of Trial Counsel at Sentencing—"Safety-valve" and "Buy Money"

In ground three Stokes contends that trial counsel failed at sentencing to pursue a "safety-valve" reduction. In ground five, he maintains that trial counsel was ineffective at sentencing (and appellate counsel was ineffective on appeal) for failing to raise the issue that the district court could not order him to pay restitution to recover drug "buy money."

Under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, known as the "safety-valve," the court is permitted to impose a sentence below the statutory mandatory minimum if five requirements are met. One of the requirements is that not later than the time of sentencing, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense." U.S.S.G. § 5C1.2(a)(5). In addition, under USSG § 2D1.1(b)(6), if the safety-valve criteria were met, Stokes would have qualified for a two-level decrease regarding offense level. However, according to the presentence report in Stokes's case, that decrease was not recommended because Stokes had not provided the government with all information regarding his involvement in the offense. *United States v. Stokes*, No. 03-CR-217, PSR ¶ 37 (E.D. Wis.).

The criterion that the defendant has truthfully provided all information "requires a defendant to make a good-faith attempt to cooperate with the authorities and volunteer all the relevant information he has concerning his offense." *United States v. Ponce*, 358 F.3d 466, 468 (7th Cir. 2004) (citations omitted). "[A] district court may consider a defendant's lack of candor in determining eligibility under the safety-valve provision." *Id.*

At sentencing, defense counsel said she had discussed the safety-valve matter with the prosecutor and Stokes, that she understood the issues the government could use to argue against the decrease, and that Stokes confirmed the information counsel received from the prosecutor. *United States v. Stokes*, No. 03-CR-217, Sent. Hr'g Tr. at 4 (E.D. Wis. filed May 23, 2006). Counsel stated that in light of her discussions with the prosecutor and Stokes, she could not argue for the two-level reduction and mentioned that such an argument might not be appropriate under ethics rules.

Government counsel then provided specific examples of how during interviews with Stokes he initially denied conduct and then admitted it only when presented with irrefutable evidence, such as a tape-recorded conversation or photograph. Based on those interviews and a letter Stokes had sent her, the prosecutor advised that she could not recommend a safety-valve reduction.

As noted above, the performance standard permits a wide latitude of attorney conduct, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks deleted). The court strongly presumes that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689. Here, defense counsel made a reasoned decision not to proffer a safety-valve argument based on the information before her and ethical rules. Further, defense counsel's decision not to seek a safety-valve sentence reduction may be seen as a strategic one. Moreover, the prosecutor noted she was not opposing a reduction in offense level points for acceptance of responsibility, and even moved for a third offense level reduction for acceptance of responsibility. An argument by defense counsel for a safety-valve sentence reduction may have caused government counsel to rethink her position or cause the court to impose a higher sentence if the details of Stokes's interviews indicated he was retreating from acceptance of responsibility.

For these reasons, the court finds that trial counsel was not deficient in declining to argue for the safety-valve reduction.[4]

---

[4]In his brief, Stokes raises for the first time the argument that defense counsel were ineffective because they did not properly advise him before the debriefing sessions with government agents and Stokes misunderstood the purpose of the meetings so he did not trust the government agents.

Regarding the imposition of buy-money repayment as restitution, Stokes overlooks two decisive facts. First, although the court may have initially stated at sentencing that the buy money was "restitution," *United States v. Stokes*, No. 03-CR-217, Sent. Hr'g Tr. at 4 (E.D. Wis. filed May 23, 2006), the buy money was *not* ordered as restitution, but instead was imposed as a condition of supervised release, *id.* at 14; *United States v. Stokes*, No. 03-CR-217, J. in Crim. Case at 4, 5 (E.D. Wis. filed June 25, 2004) (listing as an additional condition of supervised release repayment of $1,350 in buy money at a rate of at least $100 per month plus 100% of tax refunds and reiterating that the repayment of buy money is a condition of supervised release). Under "Restitution" the judgment reads "None." *United States v. Stokes*, No. 03-CR-217, J. in Crim. Case at 5 (E.D. Wis. filed June 25, 2004). Imposing the repayment of buy money as a condition of supervised release is permitted. *See United States v. Daddato*, 996 F.2d 903 (7th Cir. 1993). Second, Stokes *agreed* in the plea agreement to pay $1,350, i.e., the amount of the government's buy money paid to Stokes, as a condition of any term of supervised release. *United States v. Stokes*, No. 03-CR-217, Plea Agr. ¶ 29 (E.D. Wis. filed Jan. 13, 2004). The court questioned Stokes about this agreement at the first plea hearing, and Stokes stated that he understood that this provision was included. *United States v. Stokes*, No. 03-CR-217, Plea Hr'g 1/21/04 Tr. at 27 (E.D. Wis. filed May 23, 2006). Stokes cannot in a § 2255 proceeding succeed on a claim that trial or appellate counsel failed to raise this issue, as it was part of his plea agreement concessions.

---

(*See* Suppl. Br. at 10-12; *id.* Ex. E ¶ 10.) Stokes says that had he been properly informed of the safety-valve requirements he would have revealed all he knew about the facts of the case so he qualified for the reduction. (*Id.* at 12.) This argument, not alleged in Stokes's motion and not raised until after the government's answer, will not be considered.

(4)     Ineffective Assistance of Appellate Counsel Regarding the *Paladino* Statement

Lastly, Stokes contends that appellate counsel was ineffective for failing to rebut this court's statement upon limited remand under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

Stokes was sentenced under the Sentencing Guidelines at a time when they were mandatory.  However, during the pendency of Stokes's appeal, the U.S. Supreme Court issued *United States v. Booker*, 543 U.S. 220 (2005).  On July 21, 2005, the Seventh Circuit remanded Stokes's case for the limited purpose of obtaining this court's stance on whether it would have sentenced Stokes differently had it known the Guidelines were merely advisory.

Upon limited remand, this court permitted the parties to file re-sentencing memoranda.  Stokes's appellate counsel filed a fifteen-page memorandum.  This court considered that memorandum as well as the presentence report and the file in the criminal case before stating it would not have sentenced Stokes differently had the Guidelines been advisory.  Of note, the court remarked that it had imposed a sentence closer to the middle of the Guidelines range and had stated at sentencing that although Stokes pled guilty and cooperated somewhat, he had

> not been especially candid with the Court and ha[d] not shown in my view sufficient remorse in this case nor an attitude that he should cooperate with the government above and beyond the minimum.  The defendant also display[ed] attributes that indicate[d] that he need[ed] a period of incarceration to help adjust his attitude and to sufficiently punish him for the crimes committed.

*United States v. Stokes*, No. 03-CR-217, Sentencing Hr'g Tr. at 19 (E.D. Wis. filed May 23, 2006).

After this court's findings were forwarded to the Seventh Circuit, that court stated the parties could file "any arguments concerning the appropriate disposition of the appeal in light of the district court's decision." *United States v. Stokes*, No. 04-2730, Order (7th Cir. filed Dec. 8, 2005). Such arguments were not mandatory; instead the parties were "invite[d]" to submit arguments. *See id.* Counsel did not file any responsive argument, and the Seventh Circuit then found that Stokes had not rebutted the presumption of reasonableness regarding the mid-range sentence. *United States v. Stokes*, No. 04-2730, Unpublished Order (7th Cir. Jan. 11, 2006).

Appellate counsel has filed an affidavit in the present case indicating that he made a strategic decision not to file any written comment on this court's findings on remand. (Answer, Ex. B ¶ 9.) He says he

> could not complain about the procedure for the limited remand followed by the district court. The district court had considered the arguments raised by the parties and, specifically, had considered the undersigned attorney's arguments for leniency. The undersigned attorney concluded that there were no legal or factual arguments that the district court had imposed a sentence that was not legally reasonable or that Mr. Stokes's substantial rights had been affected.

(*Id.*)

Again, the performance standard permits a wide latitude of attorney conduct, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks deleted). The court strongly presumes that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689. Here, appellate counsel did not let a mandatory response deadline pass or ignore the opportunity to file a response with the

23

Seventh Circuit. Instead, he made a reasoned decision that no nonfrivolous arguments existed to argue that this court's sentence was unreasonable. Stokes offers no particular argument that appellate counsel should have made, but merely contends that counsel should have filed some rebuttal. Because counsel, after consideration of the particular facts and law in this case, was not required to file arguments that he considered frivolous or to stand little chance of success, he cannot be called deficient.

CONCLUSION

For the above-stated reasons,

IT IS ORDERED that Stokes's motion for appointment of counsel (Doc. 21) is denied.

IT IS ORDERED that Stokes's motions for extension of time (Docs. 22, 25, 26) are granted and Stokes's brief is deemed timely.

IT IS FURTHER ORDERED that Stokes's § 2255 motion is denied and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 23rd day of March, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE